NOT FOR PUBLICATION

                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANE J. SULLIVAN | |
|             Plaintiff, | Civil Action No. 09-2985 (PGS) |
|      v. | |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY | OPINION |
|             Defendant. | |

SHERIDAN, U.S.D.J.

      Plaintiff Diane Sullivan ("Plaintiff" or "Sullivan") seeks review of the final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits pursuant to section 405(g) of the Social Security Act, as amended, 42 U.S.C. 405(g) (the "Act"). Plaintiff filed an application for disability insurance benefits on June 28, 2004 alleging disability beginning December 20, 2002 due to back and leg pain. Plaintiff's application was denied on October 12, 2004. Hearings were held on June 10, 2006, April 4, 2007 and December 13, 2007 before Administrative Law Judge Donna A. Krappa ("ALJ"). On February 12, 2008, the ALJ denied Plaintiff's request for disability insurance benefits.

                                                I.

      As with many cases, the result here is substantially related to the credibility of the witnesses. In this case, the ALJ found that the Plaintiff as well as her critical witness Dr. Kopacz, an orthopedic

surgeon, were not believable. The issues in the case center on credibility. The facts below briefly describe the proceedings.

Plaintiff is a 48-year old woman. She resides with her husband and three children. In 2004, Sullivan was 5'6" and weighed far in excess of 300 pounds. Plaintiff underwent gastric bypass surgery in July of 2005 and had a dramatic weight loss thereafter (down to about 200 pounds). Sullivan claimed that her substantial weight loss had not improved her back condition as physicians thought. Sullivan claims she injured her back when she lifted her child while on vacation in Disney World. Plaintiff is a college graduate with a second degree in elementary education, and taught seventh grade for twenty years prior to her injury on December 20, 2002. Sullivan's occupation required her to stand and walk about 90% of the workday. Often, Sullivan carried books and supplies, and accompanied students to school activities.

At the initial hearing, Sullivan testified that she experiences lower back pain that radiates into the buttocks, groin, and through her right leg down to her foot. She stated that walking, reaching, lifting, and climbing stairs worsens her pain. At the time of this hearing, Plaintiff was five months pregnant. Prior to her pregnancy, Plaintiff was taking Percocet and Tramodol to alleviate her pain. Plaintiff stated that she could only sit for 15-20 minutes before experiencing pain. Sullivan also testified that she can not shop for groceries or complete basic household chores.

As of the April 4, 2007 hearing, Plaintiff had given birth. At this hearing, Sullivan testified that her parents care for her infant during the day; and her husband and son do most of the housework in the evening. Sullivan also testified that she was experiencing severe back pain and had difficulty sitting, standing, and walking due to pain. At some point, Plaintiff was taking Ultram for the pain. At the December 2007 hearings, the Plaintiff claimed she could not lift her baby and

2

denied some contrary statements noted in the St. Barnabas Hospital records from October, 2007. In the hospital records, the nurse noted Plaintiff had a steady gait and a full range of motion.

    A.    Plaintiff's examining and non-examining physicians

On January 31, 2003, Dr. Kenneth Kopacz, an orthopedic specialist, examined Plaintiff for back pain as well as pain and numbness in the right groin. Upon review of her MRI, Dr. Kopacz diagnosed Plaintiff with degenerative disc disease at the L1-L2 and L2-L3 discs, protrusion at L2-L3, and central stenosis at L2-L3. Dr. Kopacz prescribed Plaintiff pain medication. During the next year, Plaintiff visited Dr. Kopacz nine times and underwent epidural injections and physical therapy. Sullivan claims her pain persisted despite this treatment. In a report issued on February 23, 2004, Dr. Kopacz opined that Sullivan's condition was permanent and would not improve over time. He stated that Plaintiff could neither sit for more than three hours nor stand or walk for more than one hour in an eight-hour workday. Sullivan's condition required her to stand and move around for five minutes every half hour while in a sedentary position.. Dr. Kopacz also stated that Sullivan could lift up to twenty pounds and carry up to ten pounds occasionally, but that she was precluded from pushing, pulling, kneeling, bending, and stooping. Dr. Kopacz concluded that Sullivan was unable to return to teaching on a full-time basis.

Plaintiff was also treated by a cardiologist, Dr. Andrew Burachinksy. Dr. Burachinksy has been treating Sullivan since 1984. In a report dated August 23, 2004, Dr. Burachinksy noted that Sullivan has been morbidly obese for much of her life, despite her attempts at diet and medication. At that time, Plaintiff weighed 356 pounds, and her body mass index was within 55. Dr.

Burachinsky diagnosed Plaintiff with severe morbid obesity in combination with hypertension, hyperlipidemia, and severe lumbosacral disc disease, and advised her to have gastric bypass surgery.[1]

On July 19, 2005, Sullivan underwent gastric bypass surgery at the behest of Dr. Kopacz who advised that a reduction in weight may improve Plaintiff's condition over time. In the following year, Sullivan continued treatment with Dr. Kopacz, but he discontinued Plaintiff's pain medication due to her pregnancy. At that time, Dr. Kopacz diagnosed a lumbar disc herniation at L3-L4 with resultant radiculopathy. Dr. Kopacz opined that Plaintiff could not sit for more than one hour or stand/walk for more than one hour during the course of an eight-hour workday. Dr. Kopacz also stated that Sullivan could neither sit for more than 15-20 minutes without the ability to change positions nor lift any amount of weight. Dr. Kopacz estimated that Sullivan would likely be absent from work more than three times in a month as a result of her condition and need for treatment. Given Sullivan's restrictions as to sitting and lifting, Dr. Kopacz determined that Plaintiff was unable to perform sedentary work. Dr. Kopacz recommended surgery after the weight loss, but Sullivan declined due to the recent death of her mother who suffered complications during a knee replacement.

A follow-up MRI on March 9, 2007 revealed a disc bulge at L3-L4 and a progressive worsening of the stenosis and degeneration. On November 20, 2007, Dr. Kopacz diagnosed severe degeneration at L2-L3 and concluded that Sullivan was permanently disabled.

On April 4, 2007, Dr. Mylod, an orthopedic surgeon, provided testimony based on his review of Sullivan's medical records. Dr. Mylod stated that although Sullivan underwent gastric bypass

---

[1] Since Burachinsky's opinion was made prior to the gastric bypass surgery, the ALJ give it little weight. Plaintiff does not dispute this.

surgery, she was still quite heavy, and noted progression of herniation and degeneration at L2-3 based on Plaintiff's most recent MRI.

      B.      Commissioner's examining and non-examining physicians

On October 6, 2004, Dr. Jose Rabelo, a non-examining physician, determined that Sullivan was capable of light work.

On February 22, 2005, Dr. Justin Fernando, an examining physician, diagnosed a possible disc herniation/degenerative disc disease, right lumbar radiculopathy, and hypertension. Dr. Fernando opined that Plaintiff has moderate restrictions with regard to bending, lifting, carrying, and prolonged sitting and standing. Dr. Fernando noted that Plaintiff required assistance to dress and to alight from the examination table, yet she was able to mount the table unassisted. He also explained that Sullivan's obesity (384 pounds) contributes to her limitations in part.

In April 2005, Dr. Daly, a non-examining physician, found that Sullivan was limited to less than sedentary work.

On September 6, 2006, Dr. Kenneth Mahan, an examining physician, diagnosed Plaintiff with a herniated lumbar disc in the L1-L3 area with spinal stenosis, arthritis of the lumbar spine, and right lumbar radiculopathy. Dr. Mahan opined that Sullivan could lift twenty pounds occasionally and ten pounds frequently and could stand/walk about six hours in an eight-hour workday. He stated that Sullivan was required to alternate sitting and standing, however, Dr. Mahan did not reference a specific time interval between alternate positions. He found she could perform sedentary work.

On April 4, 2007, Dr. Martin Fechner, a non-examining physician, testified that Plaintiff was able to perform sedentary work upon review of Sullivan's MRIs. According to Dr. Fechner,

Plaintiff's MRIs showed L2-3 disc herniation and degenerative disc disease that may have progressed; however, a comparison of the MRIs was difficult due to poor resolution.

    C.    Vocational expert

Rocco Meola, a vocational expert, responded to interrogatories which the ALJ propounded. The ALJ provided the following hypothetical to Mr. Meola:

> Assume an individual of the claimant's age, education, and work history, who is able to perform sedentary work, except that this individual must be permitted to stand or change positions every 30 minutes; this individual is limited to jobs where he/she is not required to climb, kneel, crawl, or to push, pull or reach overhead using her upper extremities; [and] he/she is further limited to jobs requiring only occasional balancing, crouching, bending, and stooping.

Mr. Meola indicated that this individual could not return to her teaching position because such a position requires standing for the majority of the work day; however she could work as a registration clerk, an information clerk, and a production proof reader. Mr. Meola stated that these are semiskilled, sedentary positions, and that in the aggregate, there are 1500 such jobs in the Northern New Jersey and New York City area and in excess of 30,000 of these jobs in the national economy.

## II.

DISCUSSION

    A.    Legal Standard for Disability under the Act

A claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A plaintiff will not be considered disabled unless she

cannot perform her previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)); *see* 42 U.S.C. § 405(b). The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions. *See Heckler*, 461 U.S. at 466; *Sykes*, 228 F.3d at 262.

The Social Security Administration has developed a five-step sequential process for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. The five step process is not in dispute here, and the ALJ followed the sequential process.

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. See *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *see also* 42 U.S.C. § 405(g). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft,* 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citation omitted)); *see Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla. *See*, *e.g*., *Richardson*, 402 U.S. at

401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422. Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes*, 228 F.3d at 266 n. 9.

The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-particularly certain types of evidence (e.g., that offered by treating physicians)-or if it really constitutes not evidence but mere conclusion. *Morales*, 225 F.3d at 317 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)); *see Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir.1987). Nevertheless, the district court's review is deferential to the ALJ's factual determinations. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales,* 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Title II of the Social Security Act (42 U.S.C. § 401, et seq.) requires that the claimant provide objective medical evidence to substantiate and prove his or her claim of disability. See 20 CFR § 404.1529. Therefore, a claimant must prove that his or her impairment is medically determinable and cannot be deemed disabled merely by subjective complaints such as pain. A claimant's symptoms "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found

8

to affect . . . [one's] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). *Hartranft*, 181 F.3d at 362.

Sullivan contends that the "issues presented for review" are:

1. Whether the Administrative Law Judge (ALJ) failed to apply the treating physician rule in his evaluation of the medical evidence; and

2. Whether the ALJ properly assessed Ms. Sullivan's credibility.

1. <u>Sullivan contends the ALJ failed to apply the "treating physician rule."</u>

The Social Security Regulations require that more weight be given to opinions of treating physicians than to other medical evidence. The regulation states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. 20 CFR §404.1527(d)(2).

Despite the above regulation according her treating physician's (Dr. Kopacz) opinions more weight, the ALJ here discounted his reports because they concerned matter reserved for the Agency to decide, and some findings of the doctor lacked sufficient credibility. The ALJ wrote:

> Further, as had been noted supra, the claimant was seen in the ER on October 2, 2007 for abdominal pain, which the medical records state she attributed to frequent lifting of her infant daughter (Exhibit 19F). At the December 2007 hearing, the claimant stated that she does not lift her daughter frequently, but conceded that she does lift her. I also note that the reason for the October 2, 2007 ER visit was abdominal and not back pain, and that a Nursing Assessment noted that the claimant had a steady gait and full range of motion (Exhibit 19F).

The claimant had gastric bypass surgery with the intention of having back surgery. The gastric bypass surgery was a success due to significant weight loss, but the claimant has not undergone back surgery, despite her protestations that her pain is worse than before. In a report from October 8, 2007, Dr. Kopacz noted that the claimant reported having some difficulties at home, as she was doing more activities around the house following her mother's death. On examination, the claimant had tenderness of the lumbar spin, but with good range of motion. Neurologic exam was intact. (Exhibit 18F).

Based on the above, I find that although Dr. Kopacz is a treating source, his opinion deserves lesser weight under 20 CFR 404.1527. First, there is no evidence in the record that Dr. Kopacz has any training regarding the determination of disability under the regulations. Furthermore, in this case the claimant sought numerous evaluations of disability from this doctor during the hearing process, which was extraordinarily prolonged due to numerous medical events that occurred after the alleged onset date. It would appear to not be coincidental that in his last few communications to counsel, Dr. Kopacz specifically stated that the claimant was not capable of "sedentary" work, which was the level of work that was the focus of the interrogatories sent to the vocational expert. Furthermore, in his June of 2006 assessment of ability to work, Dr. Kopacz stated that the claimant could not push, pull, kneel, bend or stoop and could not lift or carry more than 5 pounds. However, when she presented to the emergency room at Saint Barnabas in October 2007, the claimant reported that she had "an eleven month infant and home and has been lifting infant frequently." At the third hearing, the claimant denied that she told this to the emergency room personnel. Clearly, unlike the claimant in her disability treatment proceedings, these medical professionals had no reason to make misrepresentations in her treatment records. Indeed, the claimant was more likely to truthfully report her activities to ER personnel because she knew her statements would be used to treat her for her physical complaints.

It appears that Dr. Kopacz simply rendered whatever opinion regarding the ability to work that was asked of him by his patient. His opinions started with a narrow opinion in February of 2004 that the claimant could not return to her prior job as a primary grade teacher and ended with a broad opinion that she was "permanently disabled even from sedentary work" in November of 2007 - an opinion that corresponds with counsel's theory of the case.

The ALJ's findings are consistent with regulations governing the acceptance of physician opinion. For example, the ALJ found Dr. Kopacz lacked "training regarding the determination of disability." As such, the ALJ gave little weight that Sullivan was disabled based on Dr. Kopacz's report. The ALJ reserved that decision to himself as the regulation requires. 20 C.F.R. §404.1527. The regulation states in part:

> (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

Hence, the finding of disability by Dr. Kopacz was substantially discounted by the ALJ.

In addition, the ALJ had credibility issues with some of Dr. Kopacz's opinions and findings. For example, originally Dr. Kopacz's opinion was that Plaintiff could not return to work as a teacher, but suddenly after receiving interrogatories from the vocational expert, Dr. Kopacz found Plaintiff could not perform sedentary work. Obviously, the ALJ paused over the weight to be given to this doctor's latest opinion in light of the abrupt change. Moreover, the ALJ could not comport Dr. Kopacz's opinion that Plaintiff could not push, pull, kneel, bend or stoop and could not lift anything or carry more than 5 pounds with a statement at St. Barnabas Hospital by Sullivan that at home she had been lifting her infant frequently. Assessing the evidence, the ALJ decided that the doctor's "opinion . . . corresponds with the lawyers theory in the case;" and as such, was not given much, if any, credibility.

11

The ALJ has discretion to evaluate the credibility of Plaintiff's complaints and draw a conclusion based upon medical findings and other available information. *Jenkins v. Commissioner*, 2006 U.S. App. Lexis 21295 (3d Cir. 2006).  Generally, the credibility of witnesses is quintessentially the province of the ALJ.  "Credibility determinations are the unique province of a fact finder." *See generally Dardovitch v. Haltzman,* 190 F.3d 125 (3d Cir. 1999) (internal quotation omitted). Inasmuch as the Administrative Law Judge had the opportunity to observe demeanor and determine credibility of witnesses, her findings are conclusive.  *See Wier v. Heckler*, 734 F. 2d 955, 962 (3d Cir. 1984).   *See also*, Social Security Ruling 96-7, 20 C.F.R. 404.1529 and 20 C.F.R. 416.969.  In light of the law, the ALJ's determinations are reasonable with regard to Dr. Kopacz. Sullivan connotes that the ALJ glibly dismissed Dr. Kopacz's opinion. This is not so, the ALJ carefully reviewed the testimony and weighed it with all the other testimony.  In this case, the ALJ found reasons not to give it greater weight than other sources.

    2.    <u>Plaintiff's Credibility</u>

The second issue appealed is that the ALJ erred when she discredited Plaintiff's testimony. As noted above, the ALJ has the broad discretion to evaluate the credibility of witnesses.  Here, the ALJ observed and listened to the Plaintiff at three separate hearings – July 10, 2006, April 4, 2007 and December 13, 2007.  The ALJ found Plaintiff's testimony untruthful. The ALJ sets forth an example.  At the July 10, 2006 hearing, Plaintiff testified that her husband and her parents take full care of her baby. At the December 2007 hearing, Plaintiff claimed "she is unable to lift a child." This evidence contradicts Sullivan's statements made at St. Barnabas Hospital in October 2007 where she related her abdominal pain to her frequent lifting of her baby, and the nurses notes which

12

claim that Plaintiff had a steady gait and full range of motion. The ALJ found Sullivan's testimony was not credible in light of the disparity with the St. Barnabas Hospital record.

The ALJ's assessment of credibility is an essential function of the Judge. The ALJ viewed her demeanor, as well as her ability to stand and sit on three occasions. The ALJ weighed the contradictory testimony, and her observations against the statements made and actions of plaintiff. The ALJ's conclusions on Plaintiff's lack of credibility are within the ALJ's unique province.

Sullivan contends that the "ALJ was not authorized to evaluate the plaintiff's limitations based upon her observation." SSR 95-5(p). Despite this bald assertion, the record shows the ALJ did not solely rely on her observations at trial. There are three examples where the ALJ relied upon medical evidence. First, the ALJ relied upon Dr. Mahan's opinion who found Plaintiff could perform light work. The ALJ stated:

> In his opinion, the claimant could perform light work with limited pushing and pulling in the upper extremities. Dr. Mahan stated that the claimant must periodically alternate between sitting and standing and cannot climb, kneel or crawl, but can perform all other postural functions occasionally.

Secondly, the ALJ relied on Dr. Fechner who determined Plaintiff could perform sedentary work. Lastly, the ALJ made findings based upon the reports of Fernando and Kopacz. The ALJ wrote:

> In Dr. Fernando's opinion, the claimant had only "moderate" limitations of functioning even with her obesity taken into consideration. Following gastric bypass surgery in July of 2005, the claimant had significant weight loss and had a third child. At the time of the second hearing, Dr. Fechner testified that the claimant's weight had dropped to the point where she is no longer morbidly obese. The ER report from October 2, 2007 and Dr. Kopacz's report from October 8, 2007, both suggest that the claimant is able to maintain

> some functioning, despite her back pain and obesity based upon her reports that she was lifting her child and performing more activities around the house. In addition, Dr. Kopacz noted that the claimant had good range of motion of the lumbar spine and an intact neurological examination.

It is clear that the ALJ did not act solely on her own observations, but relied on the significant medical evidence.

In conclusion, based upon the two issues appealed, the Court finds that the decision of the ALJ is affirmed and the case is dismissed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

July 15, 2010